_____

No. 95-2808
_____

United States of America,          *
                                    *
     Plaintiff - Appellee,          *
                                    *
     v.                             *
                                    *
Maribel Tauil-Hernandez,            *
                                    *
     Defendant - Appellant.         *
_____

No. 95-2810                         Appeals from the United States
_____                         District Court for the
                                    District of Nebraska.

United States of America,          *
                                    *
     Plaintiff - Appellee,          *
                                    *
     v.                             *
                                    *
Julio Mordan,                       *
                                    *
     Defendant - Appellant.         *
                                   _____

               Submitted:  February 13, 1996

                 Filed:  July 3, 1996
                       _____

Before BOWMAN, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
                       _____

LOKEN, Circuit Judge.

     The United States filed a multi-count indictment charging Maribel
Tauil-Hernandez, Julio Mordan, Eladio Rosario, Alfredo Diaz, Oswaldo
Aguirre-Helming, Monica Anderson, and Maria Diaz with narcotics and
conspiracy violations.  Each defendant pleaded guilty to conspiracy to
distribute cocaine in violation of 21 U.S.C. § 846, and the government
dropped the remaining charges.  Tauil-

Hernandez and Mordan now appeal their sentences. Mordan raises a significant legal issue, whether the Fourth Amendment exclusionary rule applies to federal sentencing proceedings. We affirm.

## I. Tauil-Hernandez.

**A. Drug Quantity.** Tauil-Hernandez timely objected to the quantity of cocaine attributed to her for sentencing purposes in her Presentence Investigation Report. After an evidentiary hearing at which Rosario, Alfredo Diaz, and two agents testified for the government, the district court[1] overruled this objection and attributed between five and fifteen kilograms to Tauil-Hernandez. That resulted in a sentence of 120 months in prison and five years of supervised release. Tauil-Hernandez argues that this quantity finding is clearly erroneous because she was only responsible for distributing between three-and-one-half and five kilograms. That lesser quantity would reduce her statutory minimum sentence from ten years to five, see 21 U.S.C. §§ 841(b)(1)(A) and (B), and her Guidelines base offense level from thirty-two to thirty, see U.S.S.G. §§ 2D1.1(c)(4) and (5).

The evidence at the sentencing hearing, viewed most favorably to the government, established that Tauil-Hernandez met Rosario in New York City in the fall of 1992 and persuaded him to begin distributing cocaine in Omaha. Between October 1992 and April 1993, Tauil-Hernandez made six trips to New York City. On each occasion, she transported 450-500 grams of cocaine purchased by Rosario to Omaha, where the conspirators distributed the cocaine from an apartment rented by Tauil-Hernandez.

On April 4, 1993, police searched an Omaha motel room, seizing 3.4 grams of cocaine, a large amount of cash, and a semi-automatic

---

[1]The HONORABLE THOMAS M. SHANAHAN, United States District Judge for the District of Nebraska.

pistol. They arrested Tauil-Hernandez as she returned to the room. Though charges resulting from this arrest were dropped, the arrest ended Tauil-Hernandez's dealings with Rosario. However, in November 1993, she began transporting cocaine to Omaha for her step-brother, Alfredo Diaz. On March 17, 1994, police arrested her at an Omaha bus station returning from New York City with 500 grams of cocaine hidden in a pillow and one gram in her cosmetics case.

On appeal, Tauil-Hernandez concedes that 4650 to 4750 grams of cocaine should be attributed to her for sentencing purposes: the 2,950 grams she transported for Rosario, the 1700 to 1800 grams she transported for Alfredo Diaz, and the 4.4 grams seized in her motel room and cosmetics case. However, that leaves the government 250 to 350 grams short of five kilograms. The government points to two additional transactions, which Tauil-Hernandez argues were not part of her role in the conspiracy. First, Rosario testified that 500 grams of cocaine were transported from San Diego to Omaha by another courier in February 1993, while Tauil-Hernandez was hospitalized for surgery. Second, FBI agent William Culver testified that a cooperating customer of the conspiracy, Javier Malendez, told Culver that Tauil-Hernandez transported a kilogram of cocaine from New York City to Omaha in September 1993. Attributing either of these transactions to Tauil-Hernandez would push her over the five-kilogram sentencing threshold.

When drug quantity is at issue, the government must establish at sentencing, by a preponderance of the evidence, the type and quantity of drugs attributable to each conspirator. See United States v. Maxwell, 25 F.3d 1389, 1397 (8th Cir.), cert. denied, 115 S. Ct. 610 (1994). We review the district court's drug quantity findings for clear error, reversing "only if the entire record definitely and firmly convinces us that a mistake has been made." United States v. Sales, 25 F.3d 709, 711 (8th Cir. 1994). After careful review of the sentencing record, we conclude that Tauil-Hernandez cannot meet this demanding standard of review.

A conspirator is responsible for all reasonably foreseeable acts of others taken in furtherance of the conspiracy. See U.S.S.G. § 1B1.3(a)(1)(B); United States v. Flores, 73 F.3d 826, 833 (8th Cir.), cert. denied, 1996 WL 282539 (June 24, 1996) (No. 95-9092). Tauil-Hernandez admitted making numerous trips to transport cocaine to Omaha. She could clearly foresee that Rosario would recruit another courier during her hospitalization to keep the Omaha conspirators supplied with cocaine. Indeed, there was testimony she knew of the San Diego trip and saw the 500 grams transported to Omaha. Thus, there was no clear error attributing these additional 500 grams to Tauil-Hernandez, and we need not consider the second disputed transaction.

In these circumstances, the district court's ultimate drug quantity finding was not clearly erroneous. The evidence at the sentencing hearing, viewed favorably to Tauil-Hernandez, would have supported a drug quantity finding of less than five kilograms. But it is not our task to reweigh the evidence unless we are firmly convinced that a mistake has been made. Though her principal role in the conspiracy was that of a courier, Tauil-Hernandez apparently persuaded more than one New York drug dealer to distribute cocaine in Omaha, and she transported large quantities of that drug over a long period of time. As the district court recognized in sentencing her to the statutory minimum prison term, the five kilogram quantity finding is harsh but clearly deserved.

**B.   Possession of a Firearm.** Tauil-Hernandez next argues that the district court erred in assessing a two-level enhancement for possession of a firearm. See U.S.S.G. § 2D1.1(b)(1).[2] This enhancement is appropriate if the government proves that "the weapon was used to further the conspiracy and the possession was

---

[2]Though Tauil-Hernandez received a mandatory minimum sentence, this Guidelines issue was potentially relevant because possession of a firearm precludes the sentencing court from ignoring the statutory minimum penalty under 18 U.S.C. § 3553(f).

reasonably foreseeable to" Tauil-Hernandez. We review those fact determinations for clear error. See United States v. Garrido, 995 F.2d 808, 815 (8th Cir.), cert. denied, 114 S. Ct. 330 (1993).

Police found the handgun under a motel room mattress, near bundles containing over $14,000 in cash. Tauil-Hernandez had rented the motel room and was arrested returning to it. Rosario testified that it was the same gun he kept under a mattress at the apartment he shared with Tauil-Hernandez. She admitted that the conspirators distributed cocaine from that apartment. She also knew that Rosario kept a gun in the apartment and that conspirator Aguirre-Helming had brought the gun to the motel room.

On this record, the district court's decision to impose a firearm enhancement must be affirmed. The crucial inquiry is whether "it is not clearly improbable that the weapon had a nexus with the criminal activity." United States v. Richmond, 37 F.3d 418, 419 (8th Cir. 1994), cert. denied, 115 S. Ct. 1163 (1995). In a conspiracy case, a sufficient nexus is established if "the weapon was found in the same location where drugs or drug paraphernalia were stored, or where part of the conspiracy took place." United States v. Payne, 81 F.3d 759, 763 (8th Cir. 1996). Even crediting Tauil-Hernandez's testimony that she was afraid of the gun and never used it, she knew that other conspirators possessed the gun in furtherance of the conspiracy.

**C.  Downward Departure.** Finally, Tauil-Hernandez argues that the district court should have granted her a downward departure under U.S.S.G. § 5K2.0 and 18 U.S.C. § 3553(b) because her sentence is substantially greater than the sentences of more culpable conspirators, and because she cooperated in unrelated government narcotics investigations, though not enough to earn a substantial assistance departure motion. At sentencing, the district court recognized its authority to depart but declined to exercise that discretion, explaining that it had taken these mitigating factors

-5-

into account in imposing the mandatory minimum sentence. That discretionary decision is unreviewable on appeal. See <u>United States v. Jenkins</u>, 78 F.3d 1283, 1290 (8th Cir. 1996).

## II. Mordan.

**A. Drug Quantity.** Mordan came to Omaha from New York in late 1993 and was recruited by Alfredo Diaz and Aguirre-Helming into the conspiracy. He made two trips to New York in February 1994, returning with four ounces of cocaine and three bottles of a cutting agent. In March, he made another trip to New York City, where he was arrested in a taxi cab with 500 grams of cocaine. Before Mordan pleaded guilty, the district court suppressed these 500 grams as illegally seized. On appeal, Mordan argues that the court then erred in basing its drug quantity finding for sentencing purposes on this suppressed half kilogram. Excluding this quantity would reduce his base offense level from twenty-six to eighteen, <u>see</u> U.S.S.G. §§ 2D1.1(c)(7) and (11), and trigger a reduction in his forty-six-month prison sentence.

Mordan first argues that the court abused its discretion in granting the government a two-week continuance of the sentencing hearing. At the initial hearing, FBI agent Culver testified to the amount of cocaine seized in New York, relying upon a laboratory report prepared by the New York City Police Laboratory. Mordan objected to use of this report as unreliable hearsay, and the court sustained that objection. See <u>United States v. Marshall</u>, 940 F.2d 382, 383 (8th Cir. 1991) (per curiam). However, the court also continued the hearing for two weeks so that the government could produce the author of the report. That chemist testified two weeks later in support of the statements in the report. She was vigorously cross-examined by Mordan's attorney.

The district court did not abuse its substantial discretion in granting this continuance. See <u>United States v. Kopelciw</u>, 815 F.2d

-6-

1235, 1238 (8th Cir. 1987) (standard of review).  The government was not unreasonable in initially believing it had enough other corroboration of cocaine quantity to establish the lab report's reliability -- Alfredo Diaz testified that he had sent Mordan to New York to purchase 500 grams of cocaine.  When the district court ruled otherwise, the resulting two-week delay did not prejudice Mordan, who thoroughly cross-examined the chemist.

Mordan next argues that the cocaine illegally seized in New York should not be admissible to prove drug quantity at sentencing.  This is an issue of first impression in this circuit.  Congress has told us not to apply exclusionary rules at sentencing.  See 18 U.S.C. § 3661, repeated in U.S.S.G. § 1B1.4.  Most of our sister circuits have concluded that the Fourth Amendment's exclusionary rule does not apply in federal sentencing proceedings,[3] though two separate opinions have urged the contrary rule.  See United States v. Jewel, 947 F.2d 224, 238-40 (7th Cir. 1991) (Easterbrook, J., concurring); Kim, 25 F.3d at 1437 (Schroeder, J., dissenting).

The Supreme Court has declined various invitations to extend the Fourth Amendment exclusionary rule beyond the criminal trial.  The rule does not apply to grand jury proceedings, see United States v. Calandra, 414 U.S. 338 (1974), to INS deportation proceedings, see I.N.S. v. Lopez-Mendoza, 468 U.S. 1032 (1984), or to civil tax proceedings, see United States v. Janis, 428 U.S. 433 (1976).  When deciding whether to extend the rule to proceedings other than criminal trials, the Court balances the likelihood of

---

[3]See United States v. McCrory, 930 F.2d 63, 68-69 (D.C. Cir. 1991), cert. denied, 502 U.S. 1037 (1992); United States v. Tejada, 956 F.2d 1256, 1263 (2d Cir.), cert. denied, 506 U.S. 841 (1992); United States v. Torres, 926 F.2d 321, 325 (3d Cir. 1991); United States v. Montoya-Ortiz, 7 F.3d 1171, 1181 (5th Cir. 1993); United States v. Jenkins, 4 F.3d 1338, 1345 (6th Cir. 1993), cert. denied, 114 S. Ct. 1547 (1994); United States v. Kim, 25 F.3d 1426, 1436 (9th Cir.), cert. denied, 115 S. Ct. 607 (1994); United States v. Lynch, 934 F.2d 1226, 1237 (11th Cir. 1991), cert denied, 502 U.S. 1037 (1992).

deterring Constitutional violations against the cost of withholding reliable information from the proceedings in question.  See <u>Illinois v. Krull</u>, 480 U.S. 340, 347 (1987).

Extending the exclusionary rule to sentencing would have a detrimental effect on the traditional judicial prerogative of sentencing an offender based upon all the relevant and reliable information that is available.  See <u>United States v. Lynch</u>, 934 F.2d 1226, 1236 (11th Cir. 1991), <u>cert denied</u>, 502 U.S. 1037 (1992).  Turning to the deterrence side of the balance, there is some force to the contention that, under the Sentencing Guidelines' relevant conduct regime, the exclusionary rule is needed at sentencing to deter police who have lawfully obtained enough evidence to convict from illegally seizing additional contraband in order to greatly increase the offender's sentence.  See <u>McCrory</u>, 930 F.2d at 70-72 (Silberman, J., concurring), and the previously cited separate opinions of Judges Schroeder and Easterbrook.  However, we doubt that there are many police officers who would risk the fruits of prior legitimate law enforcement activities in so cynical a fashion.  See <u>Lynch</u>, 934 F.2d at 1236 & n.14.  More significantly, whatever increased deterrence might result from this extension of the exclusionary rule does not, in our view, outweigh the cost of truncating the sentencing judge's traditionally broad inquiry into all that may be relevant and reliable in determining the convicted defendant's appropriate punishment.  See <u>Tejada</u>, 956 F.2d at 1263; <u>Torres</u>, 926 F.2d at 325.  We therefore agree with the other circuits that a sentencing court may properly consider suppressed evidence in determining a Guidelines sentence.

**B. Role in the Offense.**  Mordan also argues that the district court erred in finding that he was a "minor" participant in the conspiracy, entitled to a two-level reduction, rather than a "minimal" participant, entitled to a three- or four-level reduction.  See U.S.S.G. §§ 3B1.2(a) and (b).  Mordan claims that

he was the least culpable member of the conspiracy because he joined later than the others and only participated as a courier.

"[T]he downward adjustment for a minimal participant will be used infrequently," for example, "where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs." U.S.S.G. § 3B1.2, comment. (n.2). The district court found that Mordan made several trips to New York to purchase more than a small amount of cocaine for his more culpable conspirators. The court's findings as to Mordan's role in the offense are not clearly erroneous, and thus the two-level reduction must be affirmed. See United States v. Fregoso, 60 F.3d 1314, 1329 (8th Cir. 1995) (standard of review).

The judgments of the district court are affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.