# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-2374

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Appellee,　　　　　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　　v.　　　　　　　　　　　　*　District Court for the District
　　　　　　　　　　　　　　　　　*　of Nebraska
Oscar Flores Alvarez,　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Appellant.　　　　　　　　 *

_____

Submitted: November 18, 1998

Filed: February 22, 1999

_____

Before BEAM, LAY, Circuit Judge, and SIPPEL,[1] District Judge.

SIPPEL, District Judge.

　　　Oscar Alvarez entered a conditional guilty plea to two charges of distribution of methamphetamine, in violation of 21 U.S.C. § 841 (a) (1). At sentencing, the district court[2] found a total of 990.27 grams of methamphetamine attributable to Alvarez. After adjusting

_____

[1]The Honorable Rodney W. Sippel, United State District Judge for the Eastern District of Missouri, sitting by designation.

[2]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

his base level downward three levels for acceptance of responsibility, the district court sentenced him to 121 months imprisonment. Alvarez appeals his sentence, contending (1) the district court should have held the government to a clear and convincing standard of proof with respect to the total amount of methamphetamine attributed to Alvarez; (2) the district court should not have considered information from government witness Juan Neri; and (3) the government failed to prove by clear and convincing evidence, or by a preponderance of the evidence, that 933.57 grams of methamphetamine should have been attributed to Alvarez . We affirm.

## I.

On July 17, 1996, Nebraska State Patrol officers intercepted nearly a kilogram of methamphetamine at Eppley Airfield in Omaha, Nebraska. On that date, two men, later identified as Victor Pena Tenorio and Meslar Montiel, attracted the officers' attention and were followed from the airport terminal. The two men appeared to be traveling together. Upon separate questioning, Montiel and Tenorio denied that they knew each other. Tenorio later testified that he had just met Montiel that day when they purchased their tickets at the airport ticket counter.

While reviewing Montiel's ticket, one of the officers noted that Montiel had written "Interstate" and "154" on the ticket jacket. Montiel was searched and released. A search of Tenorio's luggage, however, revealed the seized methamphetamine. Tenorio was arrested.

Although Tenorio claims that he first met Montiel at the airport ticket counter, Tenorio's and Montiel's ticket stubs indicated that they were purchased with cash on the same day from an Anaheim travel office. Tenorio's ticket number was the next sequential ticket number after Montiel's.

The next day, an agent of the Immigration and Naturalization Service (INS) received information that a possible illegal alien with the last name of Montiel might be staying at the

2

Interstate Inn in Council Bluffs, Iowa. INS agents went to the Interstate Inn and found Alvarez in room 166 with two other men. One of the men gave his name as Nestor Figueroa. The agents searched Figueroa's room, number 157, and found the torn plane ticket of Meslar Montiel in the trash can. The INS agents took Alvarez and Figueroa/Montiel into custody. Evidence at the sentencing hearing suggested that Montiel and Figueroa were the same person.

On December 18, 1996, a six count superseding indictment was returned against Oscar Alvarez, Victor Pena Tenorio, and a third defendant, Juan Carlos Neri. Neri had been arrested on August 7, 1996 for possession of cocaine. The indictment charged them with conspiracy to distribute methamphetamine, conspiracy to distribute cocaine, and four substantive counts of distribution or possession with intent to distribute either methamphetamine or cocaine. The conspiracy charge stemmed in part from the methamphetamine seized at Eppley Airfield.

Alvarez pled guilty to counts three and four of the indictment which charged him with the distribution on May 5 and May 13, 1996 of a total of 56.7 grams of methamphetamine. A sentencing hearing was held on February 4, 1998. The district court reviewed evidence that connected Tenorio to Montiel at the airport and Montiel to Alvarez at the Interstate Inn.[3] In addition, the district court considered testimony and interview reports of law enforcement officers about their interviews of Juan Neri after his August 7, 1996, arrest. The interview reports memorialized statements made by Neri concerning Alvarez's involvement in drug dealing. Some of the interviews were attended by FBI Special Agent Edmundo Mireles. He testified to the authenticity of the reports and to Neri's statements therein.

Agent Mireles's testimony and the interview reports recounted Neri's admission that he had purchased drugs from Alvarez and that Alvarez was involved with the drugs seized at Eppley Airfield on July 17, 1996. Alvarez challenged the credibility of Neri's reported statements. Although the district court told Alvarez that the court would grant a continuance

---

[3]This evidence was presented in the form of transcripts from the evidence suppression hearings in this case.

and would produce Neri for cross-examination on these points, Alvarez ultimately declined the district court's offer.

The presentence report (PSR) determined that Alvarez should have been found responsible for a reasonably foreseeable quantity of more than a kilogram of methamphetamine, setting his base offense level at 36. The PSR recommended that Alvarez receive a three level increase for being the manager or supervisor in a criminal activity which involved five or more participants or was otherwise extensive. After subtracting three points for Alvarez's acceptance of responsibility, the PSR calculated a total offense level of 36. Based on this offense level and Alvarez's Criminal History Category of II, the guideline imprisonment range would have been 210-262 months. The government adopted the finding and recommendations of the PSR.

Alvarez objected to the PSR's calculation of his base offense level. He asserted that his base offense level should be calculated solely on the 56.7 grams of methamphetamine to which he pled guilty. After a three level reduction for his acceptance of responsibility, he argued his base offense level of should have been 17. This base offense level combined with his Criminal History Category of II would have resulted in a guideline imprisonment range of 27-33 months.

On April 17, 1998, Alvarez was sentenced. The district court rejected both the government's and Alvarez's sentencing calculations. Instead, the court determined that less than a kilogram[4] of methamphetamine was attributable to Alvarez. After applying a three level deduction for acceptance of responsibility, Alvarez's final base offense level was 31. This level combined with his Criminal History Category of II resulted in a guideline imprisonment range of 121-151 months for each count. The district judge sentenced Alvarez to a term of imprisonment of 121 months on each count, to be served concurrently.

---

[4]The district court found 990.27 grams attributable to Alvarez. This amount equals the 933.57 grams seized at Eppley Airfield on July 17, 1996, plus the 56.7 grams that Alvarez pled guilty to distributing.

Alvarez asserts that the district court erred in determining the drug quantity that should be attributed to him for sentencing purposes. In particular, Alvarez claimed that the district court erred by (1) failing to use the clear and convincing standard of proof for relevant conduct evidence; (2) considering out of court statements made by a co-defendant Juan Neri; and (3) attributing the 933.57 grams of methamphetamine seized at the airport to Alvarez.

We review a district court's drug quantity calculation for clear error. United States v. Santana, 150 F.3d 860, 864 (8th Cir. 1998). A district court's calculation will only be reversed if an examination of the entire record "'definitely and firmly convinces us that a mistake has been made.'" Id. (citations omitted.)

## A. Standard of Proof

At Alvarez's sentencing, the district court stated that the preponderance of the evidence standard applied to the government's burden of proof to establish the quantity of controlled substance attributable to Alvarez. The Sentencing Guidelines recommend that a district court use the preponderance of the evidence standard in resolving disputes regarding the application of the guidelines to the facts of the case. U.S.S.G. §6A1.3, comment. (Nov. 1998). This circuit has also held that the facts relied upon by a district court at sentencing need be proved only by the preponderance standard. United States v. Wise, 976 F.3d 393, 400 (8th Cir. 1992).

However, this circuit has also previously suggested that when a district court's consideration of relevant conduct results in a drastic increase in a sentence, the preponderance standard may not satisfy due process. See United States v. Geralds, 158 F.3d 977, 979 (8th Cir. 1998); United States v. Townley, 929 F.2d 365, 369 (8th Cir. 1991)("the preponderance standard the Court approved for garden variety sentencing determinations

5

may fail to comport with due process where, as here, a sentence enhancement factor becomes 'a tail which wags the dog of substantive offense.'" (quoting McMillan v. Pennsylvania, 477 U.S. 79, 88 (1986)); Wise, 976 F.3d at 401 (8th Cir. 1992)(due process concerns must be addressed when the consideration of relevant conduct so greatly increases a defendant's sentence that the conduct "essentially becomes an element of the offense for which the defendant is being punished").

Federal case law is unsettled regarding the extent to which a sentence must be enhanced, through relevant conduct evidence, in order to require heightened standards of proof to support that evidence. In United States v. Galloway, 976 F.2d 414 (8th Cir. 1992)(en banc) this circuit held that a three-fold increase in the defendant's sentencing range, based on relevant conduct evidence, was not so extreme as to raise due process concerns which would require a heightened standard of proof. The Third Circuit, however, has found that a twelve-fold departure from the median of the initial guideline range, based on sentencing factors, required the application of the clear and convincing standard of proof.[5]

Alvarez contends that his applicable sentencing guideline range should be limited to the offense to which he pled guilty, 27-33 months. He argues that the PSR's and government's advocation of a 210-262 month sentencing guideline range, an almost eight-fold increase at the high end of the ranges, triggers the necessity of the clear and convincing standard to prove relevant conduct factors. Alvarez's calculation is misleading in that it fails to address the ultimate issue, which is, the actual sentence imposed by the district court.

The district court found Alvarez's final sentencing guideline range to be 121-151 months. He was sentenced to 121 months. This sentence represents a four-fold departure from the median, 30 months, of his initial guideline range. This increase, based on the district court's consideration of relevant conduct, is not "so extreme or overwhelming as to

---

[5]The original median guideline sentence was 30 months. The defendant was sentenced to 360 months imprisonment.

raise due process concerns" which would require the imposition a heightened standard of proof.  Id. at 426.

**B. The Reliability of Statements made by Juan Neri**

At the sentencing hearing, Special Agent Edmundo Mireles testified that Juan Neri told him that Alvarez was involved with the drugs seized at Eppley Airfield.  Several interview reports between Neri and law enforcement officers were also admitted into evidence.  These reports reflected statements made by Neri that Alvarez was at the Interstate Inn on July 17, 1996 for the purpose of drug dealing, and that he was involved with the drug shipment that was intercepted that day at the airport.  On appeal, Alvarez challenges the admissibility of Neri's statements.  He contends that they contain discrepancies and, therefore, are not reliable.

Hearsay evidence is admissible at sentencing and can form the basis for sentencing determinations.  Wise, 976 F.2d at 402.  Whether hearsay evidence is sufficiently reliable to be considered for sentencing purposes depends on the particulars of each case.  Id. at 403.  Testimony by a law enforcement officer regarding statements made by co-defendants may be sufficient to attribute drug quantities to a defendant.  See United States v. Kenyon, 7 F.3d 783, 785 (8th Cir. 1993)(drug agent's calculation of drug quantity attributable to defendant based on co-defendants' statements could be deemed credible and sufficient to meet the preponderance standard).

The district court could properly have found agent Mireles' testimony credible concerning Neri's statements linking Alvarez to the 933.57 grams of methamphetamine seized at the airport.  Mireles's evidence was supported in substance by Neri's statements to other law enforcement officers as reflected in their reports.  Furthermore, Alvarez was given ample opportunity by the district court to call Neri as a witness and challenge these statements.  Alvarez declined to do so.  We find that Neri's statements were sufficiently

reliable to support the district court's consideration of those statements to determine the drug quantity attributable to Alvarez.

## C. Amount of Methamphetamine Attributed to Alvarez

Alvarez appeals the district court's determination of the amount of methamphetamine attributable to him. He does not dispute that the 56.7 grams to which he pled guilty were properly attributed to him. Rather, he challenges the attribution to him of the 933.57 grams of methamphetamine seized at Eppley Airfield.

In calculating the quantity of drugs attributable to a defendant at sentencing, the district court may consider, as relevant conduct under U.S.S.G. § 1B1.3, the conduct charged in dismissed counts. United States v. Karam, 37 F.3d 1280, 1285 (8th Cir. 1994). In exchange for his guilty plea, the government dismissed the conspiracy charges against Alvarez. Those charges were based in part on the methamphetamine seized at the airport. A review of the record reveals sufficient evidence to support the district court's finding. Therefore, we conclude that the district court's determination that a total of 990.27 grams of methamphetamine were attributable to Alvarez is reasonably supported by the evidence and not clearly erroneous.

## III.

For the reasons stated above, we affirm Alvarez's sentence.

A true copy.

Attest:

**CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.**