# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1916

_____

United States of America,      *
     *

       Appellee,      *
     *    Appeal from the United States
     v.      *    District Court for the Western
     *    District of Missouri.

Gary L. Jones, also known as Black,      *
     *

       Appellant.      *

_____

Submitted:  September 15, 1999
Filed: October 28, 1999

_____

Before BEAM, HEANEY, and FAGG, Circuit Judges.

_____

FAGG, Circuit Judge.

Gary L. Jones appeals his conviction and sentence for conspiracy to possess with intent to distribute marijuana, phencyclidine (PCP), cocaine, and cocaine base. See 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 (1994). We affirm.

In early 1988, Kansas City police and the Federal Bureau of Investigation began examining a large-scale drug operation involving members of the Barrett family and their associates. In September 1989, an undercover police officer went to a Barrett drug house and bought 13.92 grams of crack cocaine from Jones. The next month, Jones was arrested with Terry and Frank Barrett outside another Barrett drug house,

where police found $135,632 in cash, a handgun, a shotgun, a scale, and a small amount of crack. In the next few years, police recovered additional drugs, money, and firearms from the Barretts' drug houses. In late 1996, the government charged seven members of the Barrett family and five others with conspiracy to possess with intent to distribute illegal drugs. Besides controlled buys, warrant searches, and wiretaps, cooperating witnesses confirmed Jones was a regular associate of the Barretts and was involved in their drug trafficking operation for several years. Jones was arrested on the conspiracy charge in March 1997, and a jury convicted him a few months later.

For his sole challenge to his conviction, Jones contends the prosecution's use of peremptory strikes to remove two African Americans from the jury panel was intentionally discriminatory. See Batson v. Kentucky, 476 U.S. 79 (1986). We analyze Batson challenges in three steps. First, the defendant must make a prima facie showing that the prosecution exercised its peremptory challenges based on race. See id. at 96-97. After this showing is made, the burden shifts to the prosecution to give a racially neutral explanation for the challenge. See id. at 97. Last, the trial court must decide whether the defendant has established purposeful discrimination. See id. at 98.

Jones asserts the prosecution's explanations for the strikes were not race-neutral. We disagree. The prosecution struck one venireperson because she was a social worker, and another because he nodded to Jones's brother in the hallway outside the courtroom. These are both race neutral explanations for the peremptory strikes. See United States v. Davis, 154 F.3d 772, 781 (8th Cir. 1998) (peremptory strike of guidance/chemical dependency counselor was race-neutral), cert. denied, 119 S. Ct. 1072, 1078, 1090 (1999); United States v. Martinez, 168 F.3d 1043, 1047 (8th Cir. 1999) (peremptory strike of venireperson based on body position and eye contact was race-neutral).

Jones also asserts the district court did not give him an opportunity to carry his burden to prove the prosecutor's strikes were purposefully discriminatory. According

to Jones, he was not permitted to argue or present evidence relating to the persuasiveness of the prosecutor's justification.

After the prosecutor offered his race neutral explanations for the peremptory strikes, Jones's attorney said he had not seen the juror nod to Jones's brother and his brother was not available to confirm or deny the communication. Nevertheless, Jones's attorney did not ask for a chance to contact Jones's brother, or otherwise present evidence of pretext for either of the contested strikes. Jones also failed to object or request an opportunity to develop the record when the district court ruled on the ultimate issue of purposeful discrimination before Jones had offered any evidence of pretext. See United States v. Scott, 26 F.3d 1458, 1466 (8th Cir. 1994). Jones's failure to follow up on his Batson objection could have been reasonably construed by the district court as a concession that the prosecutor's reasons were racially neutral. See id. Absent evidence from Jones that the offered explanations were pretexts for discrimination, the district court remained free to find the strikes were purposefully discriminatory, but instead believed the prosecutor's explanations. See id. We must give this finding great deference and thus conclude the district court did not commit clear error in overruling Jones's Batson objections. See id. at 1467; see also Dudley v. Wal-Mart Stores, Inc., 166 F.3d 1317, 1321 (11th Cir. 1999) (district court need not give a party raising a Batson objection the chance to rebut the reason expressed for the strike).

Jones also challenges his sentence, asserting the district court erroneously calculated the quantity of drugs attributable to him. We reverse a district court's drug quantity finding for clear error and reverse only if we are definitely and firmly convinced that a mistake has been made after examining the entire record. See United States v. Tauil-Hernandez, 88 F.3d 576, 579 (8th Cir. 1996). We are not definitely and firmly convinced a mistake has been made in this case.

In calculating Jones's base offense level, the district court held Jones responsible for the equivalent of 43,485.8 kilograms of marijuana. Over 40,000 kilograms of this amount resulted from Jones's sale of one ounce of crack cocaine per week between 1990 and 1992. As narrated in Jones's presentence report (PSR), Frank Barrett made a pretrial statement to police that from 1990 to November 1992, Jones and Michael Jacques sold one to two ounces of crack cocaine per week for Terry Barrett from certain Barrett drug houses. Jones contested the amount of drugs attributed to him in the PSR, arguing he should only be held accountable for a small amount sold on one occasion to an undercover police officer. At Jones's sentencing hearing, Detective James Svoboda, the principal investigator of the Barrett conspiracy, confirmed the PSR information, testifying Frank Barrett had told him during a pretrial interview that Jones sold one to two ounces of crack cocaine a week with Terry Barrett between 1989 and 1992, Jones sold between one and two ounces of PCP a week in 1993, and Jones sold one to two ounces of PCP a week after he was released from state prison in 1995. After the hearing, the district court overruled Jones's objection and adopted the PSR in its entirety.

Jones protests that the detective's testimony about Frank Barrett's pretrial statements is hearsay. Hearsay evidence is admissible at sentencing if the evidence is sufficiently reliable, which depends on the particular circumstances of each case. See United States v. Alvarez, 168 F.3d 1084, 1088 (8th Cir. 1999). A law enforcement officer's testimony about statements made by coconspirators may be sufficient to attribute drug quantities to a defendant. See id.; United States v. Kenyon, 7 F.3d 783, 785 (8th Cir. 1993). Here, the district court could properly find credible Detective Svoboda's testimony about Frank Barrett's statements linking Jones to the sale of an ounce of crack cocaine a week between 1990 and 1992 and to the sale of certain amounts of PCP. Jones had an opportunity to cross-examine the detective about the statements, and did so. See Alvarez, 168 F.3d at 1089.

Jones argues Frank Barrett's pretrial statements are unreliable because they are contrary to his trial testimony. We disagree. Frank Barrett did not testify about specific drug amounts at trial because drug quantity is not an essential element of a conspiracy offense and detailed testimony about drug quantities can unnecessarily bog down a trial. See United States v. Buford, 108 F.3d 151, 155 (8th Cir. 1997). Instead, Frank Barrett's testimony more generally showed Jones was involved in the conspiracy to distribute drugs for several years. Frank Barrett testified that he discussed PCP and marijuana suppliers with Jones and learned they shared some of the same ones. Frank also testified, "I didn't []ever see Gary Jones sell any types of drugs. But I knew he was selling drugs . . . ," (Trial Trans. at 323), through communications with Michael Jacques and coconspirator Terry Barrett, (Trial Trans. at 326). This information was confirmed by the trial testimony of Jacques, who testified Jones sold PCP with him and coconspirator Willie Barrett, Jacques had seen Jones sell crack cocaine, and in later years, Jones sold PCP and marijuana. The fact that Jones was selling crack cocaine between 1990 and 1992 was also substantiated by a controlled buy at a drug house on February 22, 1991, when an undercover police officer bought .20 grams of crack cocaine from Jones, Jacques, and another man. When Jones was arrested on that occasion, police recovered 1.45 grams of marijuana, 6.93 grams of crack cocaine, and a loaded .9 mm pistol. We conclude Frank Barrett's pretrial statements were sufficiently reliable to support the district court's use of them in deciding the drug quantity attributable to Jones, and thus, the district court did not commit clear error in determining drug quantity.

Jones next argues the district court committed error in failing to give him credit for the time he served on an undischarged state term of incarceration under § 5G1.3(b) of the U.S. Sentencing Guidelines Manual (U.S.S.G.). Subsection 5G1.3(a) of the Sentencing Guidelines provides, "If the instant offense was committed while the defendant was serving a term of imprisonment . . . the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment." This subsection applies when a defendant commits the current offense while on parole for

another offense.  See United States v. Murphy, 69 F.3d 237, 245 (8th Cir. 1995). Subsection 5G1.3(b) provides, "If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment."

As Jones concedes, he did not raise his § 5G1.3(b) argument in the district court, so he must show plain error to prevail.  See United States v. Glasener, 981 F.2d 973, 975 (8th Cir. 1992).  Jones has not done so.  See id. at 974-76.  Jones incurred the state drug conviction from a one-sale incident in the midst of the federal conspiracy charged in this case.  After his release from state prison in 1995, Jones resumed drug activity with his coconspirators while on parole in a halfway house.  In 1997 state authorities received a report that Jones was violating his parole by incurring a new felony offense-- the current federal drug conspiracy--and a parole violator's warrant was issued for Jones's arrest.  Because Jones committed part of the federal conspiracy offense while on parole for the state offense, § 5G1.3(a) applies, and § 5G1.3(b) does not.  See Murphy, 69 F.3d at 245.  We thus conclude the district court did not commit error, much less plain error, in failing to apply § 5G1.3(b).

Jones also contends the district court committed error by enhancing his sentence for possession of a firearm under U.S.S.G. § 2D1.1(b)(1).  Jones concedes he failed to object to the application of § 2D1.1, so again we review only for plain error.  The firearm possession enhancement is appropriate when the government proves "the weapon was used to further the conspiracy and the possession was reasonably foreseeable" to the defendant.  Tauil-Hernandez, 88 F.3d at 579.  It is enough if the gun is "found in the same location where drugs or drug paraphernalia were stored, or where part of the conspiracy took place."  Id. at 580.  Here, the record is full of references to firearms recovered from the various drug houses used by the

coconspirators, including Jones. We conclude the district court did not commit plain error in enhancing Jones's sentence for firearm possession.

Jones last contends the district court should have reduced his offense level by two for being a minor participant in the charged conspiracy. See U.S.S.G. § 3B1.2(b). We review the denial for clear error, see United States v. Wilson, 102 F.3d 968, 973 8th Cir. 1996), and find none. Jones had the burden to prove his eligibility for the reduction, see id., and failed to do so. Even if Jones is less culpable than his coconspirators, he is not entitled to the minor participant reduction if he was "deeply involved" in the criminal acts. Id. Evidence at sentencing showed Jones was deeply involved in the conspiracy for several years as a seller of crack cocaine, PCP, and marijuana. We cannot say the district court committed clear error in denying Jones the reduction.

Having carefully reviewed Jones's arguments, we affirm his conviction and sentence.

HEANEY, Circuit Judge, dissenting.

Jones' guidelines sentence rose from a range of 6-12 months to 292-365 months based solely on information provided by Frank Barrett–the kingpin of the Barrett drug operation–concerning Jones' sales of crack. Barrett testified at Jones' trial, but said precious little about Jones' dealings in crack. The evidence relied upon by the district court in inflating Jones' sentence came from an investigator's account of a statement Barrett made before pleading guilty pursuant to a plea agreement–a statement Barrett apparently based solely upon information provided by Michael Jacques. Because I cannot conclude this third-hand information was a sufficiently reliable basis for the district court's ponderous drug-quantity finding, I respectfully dissent.

I.

At trial, Barrett testified regarding Jones' drug sales as follows:

    A  I did not see Gary [Jones] selling PCP at any time.  I indicated that to investigators, that I didn't never see Gary Jones sell any types of drugs.  But I knew he was selling drugs because the mule they call him, Mike Jacques, he would always sell the drugs because he owe everybody.

    Q  Uh-huh.  So you never saw Gary Jones sell any drugs?

    A  No, I haven't.

    Q  You never saw Gary Jones provide drugs to anyone?

    A  No, I haven't.

    Q  To the best of your knowledge, then Gary Jones wasn't involved with any conspiracy to distribute drugs out of your house or any of your brothers' houses?

    A  Gary Jones sold PCP and marijuana.

    Q  Could you answer my question, please?

    A  He did not sell out of none of those drug houses I indicated, no, he did not.

    . . . .

    A  Sir, I indicated earlier that Gary Jones and Terry was best friend and Gary Jones was selling crack cocaine around 5706 Park.  I told you that earlier.

    Q  Now, you've just told me that you've never seen Gary Jones sell crack or any other drug?

    A  Michael Jacques sells drugs with Terry Barrett, which was around there, they're a crew[.]

    . . . .

    Q  Have you ever – then the only information that you have relating to Gary Jones selling drugs comes from Michael Jacques?

    A  Man, you don't understand.  That's a big indication.  These guys were best friends.  These guys went to school together.  What is he going to lie on him?  It don't take a rocket scientist.  He don't work at CableVision or something like that.

    . . . .

Q   The only information that you have relating to Gary Jones selling drugs comes from Michael Jacques; is that true?
A   And Terry, my brother.
Q   And your brother Terry?
A   Uh-huh.

(Tr. Vol. III at 323-26.)

The probation officer who prepared the presentence report (PSR) attributed to Jones some 40,000 kilograms of marijuana equivalent based on "[t]estimony from Frank Barrett [that] Jones sold one to two ounces of crack cocaine per week for Terry Barrett" from 1990 to 1992.  (PSR ¶ 27.)  Jones objected to the drug-quantity determination made in the PSR.  In support of that determination, the government offered at the sentencing hearing the testimony of Detective James Svoboda, principal investigator of the Barrett conspiracy.  Svoboda testified that he interviewed Frank Barrett before Barrett pleaded guilty and that "[b]asically Mr. Barrett had told us between 1989 and 1992 Gary Jones sold one to two ounces of crack cocaine a week for Terry--or with Terry Barrett."  (Sent. Tr. at 17.)

II.

I acknowledge that the Confrontation Clause presents no bar to the use of Svoboda's testimony to establish the drug quantity attributed to Jones.  See United States v. Wise, 976 F.2d 393, 401 (8th Cir. 1992).  Likewise, I recognize that due process does not require that drug quantities be proven beyond a mere preponderance of the evidence.  See United States v. Behler, 14 F.3d 1264, 1272 (8th Cir. 1994).  Nevertheless, drug quantity is "a critical calculation," United States v. Simmons, 964 F.2d 763, 773 (8th Cir. 1992), and the burden of proving drug quantities lies with the government, see United States v. Stavig, 80 F.3d 1241, 1245 (8th Cir. 1996).  Although the rules of evidence do not apply at sentencing, relevant information considered by the sentencing court must have "sufficient indicia of reliability to support their probable

accuracy." U.S.S.G. § 6A1.3(a), p.s. (emphasis added). I am unable to find in the record any basis from which to infer the probable accuracy of the decidedly brief and imprecise statement Frank Barrett gave immediately before pleading guilty pursuant to a plea agreement.

It is apparent to me that the reason why the government did not call Barrett at Jones' sentencing is that Barrett had been sentenced within one month after his trial testimony against Jones, and therefore at the time of Jones' sentencing Barrett no longer had any motivation to assist the government. It may be, then, that Barrett would have lied at Jones' sentencing, minimizing Jones' drug activities. However, it may also be that Barrett was lying when he implicated Jones prior to entering his guilty plea, either to minimize his own involvement in the conspiracy or to increase his odds of receiving a reduced sentence on account of his substantial assistance to the government. This situation requires that the district court engage in a careful assessment of Barrett's credibility, but the district court never observed Barrett address the quantity of crack Gary Jones was selling.[1] I see no basis in the record to believe Barrett was more likely to tell the truth before pleading guilty than after receiving the benefit of his plea agreement. Cf. United States v. Hiveley, 61 F.3d 1358, 1362 & n.2 (8th Cir. 1995) (upholding district court's drug-quantity determinations based on co-conspirators' testimony where court made specific findings concerning credibility of each witness; "To sentence an offender by the weight of drugs attributed to that person by a co-conspirator now cooperating with the government usually for a reduced sentence, is a procedure that can be subject to much error and can justifiably be criticized.").

---

[1]In fact, at sentencing the district court rebuffed Jones' attorney's effort to attack Barrett's credibility, stating, "[Y]our interrogation would be of more significance if you had a jury that you were making that examination to. I find it not helpful." (Sent. Tr. at 21.)

III.

As the record currently stands, I believe the district court's drug-quantity determination is clearly erroneous and must be reversed for a more substantial evidentiary hearing at which Frank Barrett could testify and be subjected to cross-examination.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.