**UNITED STATES of America, Plaintiff–Appellee–Cross–Appellant,**

v.

**Gregory HAYNES, Defendant–Appellant–Cross–Appellee.**

**United States of America, Plaintiff–Appellee–Cross–Appellant,**

v.

**James Denton, Defendant–Appellant–Cross–Appellee.**

Nos. 98–30221, 98–30240.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 1999

Filed June 16, 2000

As Amended on Denial of Rehearing and Rehearing En Banc Aug. 15, 2000.*

---

* Judge Reavley and Judge McKeown have voted to deny Haynes's and Denton's petitions for rehearing. Judge McKeown has voted to

deny both petitions for rehearing en banc, and Judge Reavley so recommends. Judge Reinhardt has voted to grant both petitions for rehearing and for rehearing en banc.

Allen M. Ressler, Browne & Ressler, Seattle, Washington, for defendant-appellant, cross-appellee Gregory Lee Haynes.

Michael C. Nance, Seattle, Washington, for defendant-appellant, cross-appellee James Denton.

Karin B. Hoppmann, United States Department of Justice, Washington, D.C., for plaintiff-appellee, cross-appellant United States.

Before: REAVLEY,[1] REINHARDT, and McKEOWN, Circuit Judges.

Opinion by Judge McKEOWN; Partial Concurrence and Partial Dissent by Judge REINHARDT.

McKEOWN, Circuit Judge:

At the conclusion of a three-year investigation, Gregory Haynes ("Haynes") and James Denton ("Denton") were arrested and indicted for manufacturing marijuana, conspiring to manufacture marijuana, and conspiring to commit money laundering. During the investigation, law enforcement relied on information provided by Dale Fairbanks ("Fairbanks"), a private investigator who worked for an attorney who represented Haynes and Denton during the initial phase of the investigation.

Claiming government misconduct based on the government's reliance on Fairbanks as an informant, Haynes and Denton filed a motion to dismiss indictment, or alternatively, to suppress evidence as well as a

---

1. The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation.

motion to suppress fruits of searches that were conducted pursuant to search warrants. After the district court refused to dismiss the indictment or to suppress fruits of searches but partially granted their alternative motion to suppress evidence, Haynes and Denton entered conditional guilty pleas to the marijuana conspiracy and money laundering counts of the indictment. They now appeal the denial of their motions to dismiss the indictment and to suppress fruits of searches. The government cross-appeals the sentence calculation, specifically, the court's decision to exclude 2,200 lawfully seized marijuana plants from the statutory minimum calculation.

At issue in this appeal are: 1) whether the government's use of Fairbanks as an informant rises to the level of outrageous government misconduct warranting dismissal of the indictment; 2) whether probable cause supports the issuance of the search warrants; and 3) whether, in order to punish government misconduct, the district court had the authority to exclude lawfully seized marijuana plants from the quantity calculus for purposes of determining the applicable mandatory minimum sentence. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court's refusal to dismiss the indictment as well as its denial of the motion to suppress fruits of searches, but reverse on the sentencing issue.

## BACKGROUND

To understand the tangled web involving the various marijuana grows; Haynes and Denton and their attorney, Mark Mestel; the investigator-turned-informant, Fairbanks; and the attendant law enforcement investigation, we outline this complex story in some detail.

2. The "motion to dismiss indictment, or alternatively, to suppress evidence" was a motion that sought suppression of evidence obtained

### The Marijuana Grows

Haynes and Denton were involved in two different marijuana grows: one in Stanwood, Washington, and another in Warden, which is in eastern Washington. On May 13, 1994, firefighters discovered some 2,200 marijuana plants at a Stanwood farm, when a fire broke out in the pole barn where the plants were kept. They contacted law enforcement authorities, who obtained a search warrant, seized the plants, and initiated a criminal investigation. One of the vehicles on the farm, a cab cargo van, was traced to a company owned and operated by Haynes. In September 1994, the government instituted civil forfeiture proceedings relating to the Stanwood real property and various items of personal property including the Haynes vehicle.

It is undisputed that the Stanwood plants were lawfully seized and that the seizure had no connection to Fairbanks. At the time that the authorities seized these plants, Fairbanks knew nothing about the case, as it was the discovery of the Stanwood grow that prompted Haynes and Denton to hire Mestel, who then asked Fairbanks to serve as his private investigator on the case. At no time did Haynes or Denton move to suppress the 2,200 plants found at Stanwood.[2]

The Warden grow was established prior to the Stanwood grow underneath some alfalfa fields on Denton's Warden property; it was dismantled shortly after the discovery of the Stanwood grow because Haynes and Denton were concerned about the possibility of criminal investigation. Authorities first learned that there might be a grow at Warden when, in the summer of 1995, Fairbanks intimated to a county prosecutor that another grow existed in the eastern part of the state. In October 1995, Haynes disclosed the shutdown grow to Fairbanks. About the same time, Fair-

directly or indirectly *from Fairbanks,* not physical evidence obtained as a result of the Stanwood fire.

banks, who by then had developed a personal relationship with Haynes, began assisting Haynes and Denton with their marijuana business. For example, Fairbanks scouted possible locations for new marijuana grows, obtained some automatic weapons for Haynes, and purchased supplies for the Warden grow. All this assistance was provided without Mestel's knowledge, and was independent of Fairbanks's work as Mestel's investigator.

In January 1996,[3] Fairbanks met with law enforcement officials, provided information about the Warden grow and about purported marijuana deliveries to Mestel, and signed on as an informant, a role he filled until Haynes and Denton were arrested in the summer of 1997. At some point, apparently of his own accord, Fairbanks falsely told Haynes that the criminal investigation sparked by the discovery of the plants at Stanwood had been closed. Haynes thereafter restarted the Warden grow, at least as of April 1997 and possibly some months earlier. Fairbanks informed law enforcement officials of this development in April 1997 and subsequently led them to the area of the Warden property where the underground grow was located, at which point agents detected marijuana. On returning to the property with a search warrant, they discovered some 780 marijuana plants.

**Motions to Dismiss or Suppress**

Haynes and Denton filed motions seeking dismissal of the indictment or alternatively, suppression of evidence obtained in violation of the attorney-client privilege or the Constitution. In sum, Haynes and Denton charged the government with a "planned and deliberate invasion" of their confidential relationship with Mestel by using Fairbanks as a paid informant. After a five-day evidentiary hearing, the district court made extensive findings and then denied their request to dismiss the indict-

ment. With regard to Stanwood, the court found that Haynes and Denton conspired to obstruct justice in the civil forfeiture action and that related communications with Mestel were not shielded by the attorney-client privilege. The court agreed, however, to suppress evidence of privileged communications about the criminal investigation of the Stanwood grow. Specifically, the court suppressed:

> all evidence pertaining to the communications between Mestel and Haynes, or among Mestel, Haynes and Fairbanks, concerning the possible criminal investigation of the Stanwood property which occurred during the period of Mestel's representing Haynes.

The court found that the attorney-client relationship between Haynes and Mestel was over, at the latest, by the end of 1995 and that the relationship between Denton and Mestel had ended even earlier, in July 1995.

Commenting in detail on the government's interaction with Fairbanks, the district court concluded that "the government was vigilant about the attorney-client privilege and established safeguards so as not to learn facts that could be subject to privilege." Recognizing, however, that Fairbanks had relayed certain information to the government in violation of the attorney-client privilege, the court reiterated that Fairbanks's testimony would be suppressed at trial "as it relates to anything he learned from Haynes prior to January 1, 1996 in connection with the criminal investigation of the Stanwood property . . . ."

In another motion to suppress evidence, Haynes and Denton sought to suppress the 780 marijuana plants seized pursuant to a search warrant issued for the Warden property. Denying the motion, the district court found that probable cause supported the warrant "even if all the information

---

**3.** By this point, Fairbanks was no longer working for Mestel in connection with his prior representation of Haynes and Denton, as Mestel's attorney-client relationship with Haynes and Denton had ended.

provided by Fairbanks ... involving transactions and communications" subject to suppression were excised.[4] The court alternatively held that almost all of the information provided by Fairbanks and offered in support of the warrant requests was covered by the crime-fraud exception to the attorney-client privilege or obtained after the attorney-client relationship had ended. As the court had found in setting the contours for its ruling on the combined motion to dismiss or suppress, Mestel had ceased representing either Haynes or Denton in connection with the Stanwood criminal investigation by the end of 1995.

Following these rulings, Haynes and Denton pled guilty to the marijuana conspiracy and money laundering counts of the indictment, admitting their involvement in the Stanwood and Warden grows and specifically acknowledging responsibility for a quantity of marijuana plants between 1,000 and 4,000. The plea agreement stated that "[t]he parties agree that the amount of marijuana for which the defendants are accountable is between 1,000 and 4,000 plants.... The defendants understand that the Court is not bound by this agreement and will make an independent determination."

**Sentencing**

At sentencing, the district court explained that the offense level for purposes of the Sentencing Guidelines would be determined by the plea to the money laundering count, not the marijuana conspiracy count, because the offense level was higher for the former count. It then noted that either a five or ten-year statutory manda-

tory minimum would come into play. If the Stanwood plants were counted, then there would be a ten-year mandatory minimum. If the Stanwood plants were excluded from the quantity calculus (leaving only the Warden plants), then the statutory minimum would be five years.[5]

After hearing argument, the district court ruled that the Stanwood plants would not be considered in determining the statutory minimum.[6] Incorporating its prior findings and conclusions on the motions to dismiss and to suppress, the court reasoned that exclusion of the Stanwood plants was appropriate because "[t]he information provided to the government ... relating to the Stanwood grow was severely tainted by the violation of the defendant's [sic] attorney-client privilege." The court further noted that it was not convinced that the independent informant's "involvement and his limited knowledge would have been enough to result in the type of indictment that we have here," especially in light of the fact that although the Stanwood grow was first brought to the prosecutor's attention in May 1994, no arrest occurred until July 1997. These comments were somewhat at odds with the district court's earlier, detailed findings that the government took appropriate steps to protect privileged information and that certain testimony from Fairbanks would be suppressed at trial to avoid any taint regarding the Stanwood grow.

Exclusion of the Stanwood plants meant that the ten-year minimum did not apply. Rather, the sentence was determined by

4. The affidavit also included information obtained through police surveillance and information provided by another, independent informant, who had worked in the underground Warden grow some years previously.

5. The five-year minimum is triggered by a quantity of 100 or more marijuana plants, 21 U.S.C. § 841(b)(1)(B)(vii); the ten-year minimum becomes operational in cases involving 1,000 or more marijuana plants. *Id.* § 841(b)(1)(A)(vii). A five-year minimum would apply only if the 780 Warden plants alone were counted. Exclusion of the War-

den plants, as opposed to the Stanwood plants, thus would not have changed the sentencing result in this case.

6. The court also ruled that the Stanwood plants would not be considered in determining the Guideline range for the marijuana conspiracy count, but this is irrelevant to the determination of the proper sentence given that the offense level for the money laundering count was higher than the offense level for the marijuana conspiracy count.

the Sentencing Guideline range for the money laundering count (87–108 months), with a five-year statutory minimum floor as a result of the number of plants found at Warden. The court then relied on *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), to depart downward from the Guideline range, and sentenced Haynes and Denton to a six-year jail term. The court's reason for the downward departure was substantially the same as its reason for excluding the Stanwood plants in the quantity calculus. As the court explained, the "highly unusual circumstances of Mr. Fairbanks and what he provided to the government does [sic] in my opinion provide a basis for downward departure.... [T]here are serious issues that have been raised about the involvement of the informant, the payment of money to him, and the attorney-client privilege that was affected by the government's use of this informant."

## DISCUSSION

### I. Motion to dismiss the indictment

Alleging various forms of government misconduct generally related to use of Fairbanks as an informant, Haynes and Denton invoke the Due Process Clause of the Fifth Amendment to mount several distinct challenges to the district court's denial of their motion to dismiss the indictment. The question before us is whether the government's use of Fairbanks rises to the level of outrageous misconduct warranting dismissal of the indictment.

■ We review the district court's factual findings for clear error but review de novo its refusal to dismiss the indictment. *See United States v. Cuellar*, 96 F.3d 1179, 1182 (9th Cir.1996). We reject each of appellants' challenges, as well as their argument that the totality of the actions at issue violates due process, and therefore affirm the denial of the motion to dismiss the indictment. The district court properly concluded that suppression of tainted evidence at trial was the appropriate reme-

dy for any prejudice Haynes and Denton suffered with respect to privileged confidences that Fairbanks may have improperly relayed.

### A. Intruding into attorney-client relationship

■ Haynes and Denton largely focus their argument about outrageous misconduct on the claimed intrusion into their attorney-client relationship and the government's acquisition of information protected by the attorney-client privilege. We acknowledge that "a claim of outrageous government conduct premised upon deliberate intrusion into the attorney-client relationship will be cognizable where the defendant can point to actual and substantial prejudice." *United States v. Voigt*, 89 F.3d 1050, 1066 (3d Cir.1996); *see also United States v. Green*, 962 F.2d 938, 941 (9th Cir.1992). The question then is the remedy for misconduct. The Ninth Circuit traditionally has identified two remedies: 1) dismissal of the indictment, which is drastic, disfavored, and thus used only in the most egregious cases; or 2) suppression at trial of evidence improperly obtained. *See, e.g., United States v. Rogers*, 751 F.2d 1074, 1076, 1078–79 (9th Cir. 1985).

■ In this case, the district court recognized that Fairbanks turned over certain privileged information to the government but found that the government was vigilant about the privilege and established safeguards to protect such information. Ultimately, the court concluded that any prejudice could be prevented by suppressing the tainted evidence. Accordingly, it ruled that the intrusion did not warrant dismissal of the indictment and that suppression of the tainted evidence was the appropriate remedy. Based on the district court's careful and extensive fact finding, and based on our independent review of the complex factual record, we conclude that the court's factual findings were not clearly erroneous. We thus hold that the court properly refused to dismiss the in-

dictment; suppression of tainted evidence at trial was an appropriate remedy sufficient to cure any prejudice to Haynes and Denton resulting from the intrusion on their attorney-client relationship. *See United States v. Fortna,* 796 F.2d 724, 732 (5th Cir.1986) (quoting *United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981) for the proposition that the "remedy characteristically imposed" when the government obtains evidence in violation of the Fifth or Sixth Amendment "is not to dismiss the indictment but to suppress the evidence or to order a new trial if the evidence has been wrongly admitted").

### B. Encouraging new criminal activity

■ Haynes and Denton also contend that the government acted outrageously by encouraging them to engage in new criminal activity. Specifically, they argue that they would not have restarted the Warden grow had Fairbanks not told them that the criminal investigation sparked by the discovery of the Stanwood plants had been closed. This information was of course false, for the investigation was in fact ongoing, and Fairbanks was well aware of this.

■ If the government's involvement in a criminal endeavor shocks the "universal sense of justice," then the Due Process Clause bars prosecution. *See United States v. Ryan,* 548 F.2d 782, 789 (9th Cir.1976). Nevertheless, "the outrageous conduct defense is generally unavailable where the criminal enterprise was already in progress before the government became involved or where the defendant was involved in a continuing series of similar crimes during the government conduct at issue." *United States v. Stenberg,* 803 F.2d 422, 429 (9th Cir.1986) (emphasis

omitted), *superseded on other grounds by statute as stated in United States v. Atkinson,* 966 F.2d 1270, 1273 n. 4 (9th Cir. 1992).

The criminal enterprise conducted at both Stanwood and Warden was set up and operated long before Haynes and Denton met Fairbanks. And, with respect to the Warden grow, there is no basis to argue that the government created the new criminal activity that began in 1997. Haynes and Denton had both the resources and the desire to restart the grow and were merely awaiting a "safe" time to do so.[7] The government neither "engineer[ed] and direct[ed] the criminal enterprise from start to finish," nor "manufacture[d]" appellants' crimes. *Stenberg,* 803 F.2d at 429.

### C. Contingent payment to Fairbanks

■ Haynes and Denton further argue that the government's contingent payment of money to Fairbanks was outrageous. Contingent fees themselves do not, as a matter of law, constitute outrageous government misconduct. *See Cuellar,* 96 F.3d at 1182. For this reason, Haynes and Denton cannot attack the contingent fee arrangement on its face but must instead attack it by arguing that Fairbanks played a role in the creation of their criminal activity that was sufficient to constitute outrageous misconduct. We have already rejected this contention.

### D. Misconduct before the grand jury

■ Haynes and Denton also argue that the district court should have exercised its supervisory power to dismiss the indictment on the ground that the government engaged in various acts of misconduct before the grand jury. To the extent that their argument is based on privileged

---

7. In addition, there is no evidence that law enforcement or any other government entity or individual advised Fairbanks to falsely inform Haynes that the investigation had been closed. It appears that Fairbanks took this step of his own accord. We can only specu-

late as to Fairbanks's motives. He seems to have been playing both sides against the middle while actively participating in the marijuana enterprise carried out by Haynes and Denton.

testimony improperly elicited from Fairbanks, the challenge fails because a grand jury is permitted to consider evidence obtained in violation of a privilege, whether the privilege is established by the Constitution, statute, or the common law. *See United States v. Calandra*, 414 U.S. 338, 346, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). To the extent that Haynes and Denton contend that the government introduced perjured and inflammatory testimony, any such error was harmless. *See United States v. Hasting*, 461 U.S. 499, 506, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255–56, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). The evidence of their involvement in the marijuana conspiracy was overwhelming. Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose "substantial exculpatory evidence" to a grand jury, *see United States v. Williams*, 504 U.S. 36, 51–55, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992), even if that evidence impeaches the credibility of a key witness. *See United States v. Isgro*, 974 F.2d 1091, 1093, 1096 (9th Cir.1992).

## II. Motion to suppress fruits of searches

█ Haynes and Denton also challenge the district court's denial of their motion to suppress the evidence, including 780 marijuana plants, seized at Warden during the execution of a search warrant for that property. Specifically, they contend that the affidavit on which the search warrant was based was irretrievably tainted by information that Fairbanks passed on in violation of the attorney-client privilege and that absent this tainted information, probable cause did not support the warrant.

█ We disagree. First, most of the information that Fairbanks provided with respect to Warden was not privileged and therefore supports a finding of probable cause. As the district court found, Haynes disclosed the Warden grow to Fairbanks in connection with activities outside the attorney-client privilege and even requested that he refrain from informing Mestel. Fairbanks had occasion to learn a great deal about the grow when he began helping Haynes and Denton with their marijuana activities; for example, he not only saw the Warden site but even purchased supplies for the grow and was told by Haynes in early 1997 of its reopening. Second, apart from the information provided by Fairbanks, the affidavit relies on information obtained from an independent informant and through police observation. This information, coupled with the non-privileged information Fairbanks provided, easily suffices to establish probable cause. *See generally Illinois v. Gates*, 462 U.S. 213, 227–28, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (holding that probable cause for the issuance of a search warrant exists when, "given all the circumstances set forth in the affidavit . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place" and stating that the "duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed") (citation omitted).

## III. Sentencing calculation—Exclusion of legally seized marijuana plants from the quantity calculus

█ By excluding the 2,200 Stanwood plants from the quantity calculus to assess the applicable mandatory minimum sentence under 21 U.S.C. § 841(b)(1), the district court determined that a five-year rather than a ten-year mandatory minimum applied. The question before us is whether the district court could, as a matter of law, ignore the guilty plea, which acknowledged an admitted number of legally seized plants, and then exclude those plants from the quantity calculus on the basis of government misconduct. We hold that, under the circumstances presented here, the court lacked authority to use

exclusion of the Stanwood plants as a cudgel to punish government misconduct.

Although we are sympathetic to the result the district court sought to reach in this troubling case, the sentencing remedy it imposed is problematic because it both ignores the marijuana conspiracy convictions and does not correlate to the government's alleged misbehavior. Significantly, having expressed concerns over the role Fairbanks played in the investigation, the court had already suppressed Stanwood-related evidence stemming from him. In the face of that favorable ruling, Haynes and Denton nonetheless chose to plead guilty-acknowledging responsibility for 1,000–4,000 plants-instead of going to trial. Once they pled guilty to the marijuana conspiracy count, which covered both the Stanwood and Warden grows, the court had to apply the statutory minimum. Accordingly, we reverse on the sentencing issue.

Under § 841(b)(1)(A), a person who commits a violation of subsection (a) involving "1,000 or more marijuana plants regardless of weight," 21 U.S.C. § 841(b)(1)(A)(vii), "*shall* be sentenced to a term of imprisonment which may not be less than 10 years...." *Id.* § 841(b)(1)(A) (emphasis added). Haynes and Denton

pled guilty to conspiracy to manufacture marijuana, a violation of § 841(a)(1), and further admitted in their plea that they were accountable for at least 1,000 plants. The court, though acknowledging that Haynes and Denton were responsible for 2,200 plants at Stanwood and 780 at Warden-well over the 1,000 plants required to trigger the ten-year minimum-refused to impose that sentence.[8] The language of § 841(b)(1)(A), which states that a defendant *shall* be sentenced to a term of at least ten years, is mandatory, not optional. As a leading sentencing treatise notes:

> The statutory minimum sentence must be imposed unless the defendant is a first-time offender who qualifies for the "safety valve" under guideline section 5C1.2, or the government moves for a downward departure based on the defendant's "substantial assistance" under guideline section 5K1.1, or 18 U.S.C. § 3553(e), or Rule 35(b) of the Federal Rules of Criminal Procedure.

Roger W. Haines, Jr., Frank O. Bowman, III, & Jennifer C. Woll, Federal Sentencing Guidelines Handbook § 2D1, at 268 (Nov.1999 ed.). Because no exception to the statutory minimum applies in this case,[9] the court lacked the authority to

**8.** Although the plea agreement contained a clause stating that the district court would make an independent determination of the amount of marijuana for which Haynes and Denton were accountable, this provision did not give the court latitude to ignore the 2,200 Stanwood plants-Haynes and Denton pled guilty to the Stanwood grow both as to the amount and the location. All the clause did was to reiterate the well-accepted rule that it is ultimately up to the sentencing court, rather than the parties, to determine the quantity of plants for which a defendant is legally responsible. That the clause was phrased in terms of the *defendants'* understanding-"[t]he defendants understand that the Court is not bound by this agreement and will make an independent determination"-indicates that its purpose was to notify Haynes and Denton that the court, in its factfinding capacity at sentencing, might conclude that the agreed-upon calculation was not accurate. No one suggests that the calculation of amounts is in

issue here. Accordingly, neither this clause nor any governing law gave the court authority to exclude the Stanwood grow from the quantity calculus.

**9.** The "safety valve" provision was not applicable, and the government did not move for departure under 18 U.S.C. § 3553(e) (permitting departures based upon "substantial assistance in the investigation or prosecution of another person who has committed an offense."). A claim of sentencing entrapment is likewise unavailable because Haynes and Denton were in no way led to create or enhance the Stanwood grow. Sentencing entrapment occurs when a defendant, although predisposed to commit a *lesser* offense, is entrapped into committing a greater offense, subject to greater punishment. *See United States v. Castaneda,* 94 F.3d 592, 594 (9th Cir.1996); *see also United States v. Naranjo,* 52 F.3d 245, 249–50 (9th Cir.1995); *United States v. Montoya,* 62 F.3d 1, 3 (1st Cir.1995).

refuse to impose the ten-year mandatory minimum.

Ignoring the plants discovered at Stanwood was improper because doing so effectively eliminated the marijuana conspiracy convictions as they related to the Stanwood grow. Haynes and Denton pled guilty to conspiracy to manufacture marijuana and admitted their responsibility for both the Stanwood and Warden grows, which contained approximately 2,200 and 780 plants, respectively. They lodged no challenge to the plea agreement. This is not a case in which the parties dispute the number of plants found at Stanwood, as in *United States v. Tauil–Hernandez*, 88 F.3d 576, 579 (8th Cir.1996) (involving disagreement over number of grams of cocaine attributable to the defendant for sentencing purposes), nor can Haynes and Denton argue that any of these plants were attributable to the government or illegally seized.

Significantly, Haynes and Denton never moved to suppress the Stanwood plants; rather, they moved: 1) to dismiss the indictment or, in the alternative, to suppress evidence obtained directly or indirectly from violation of the attorney-client privilege, that is, *from Fairbanks*; and 2) to suppress the *Warden* plants, on the theory that there was no probable cause to issue the search warrant if the information provided by Fairbanks were excluded. The motions were not directed to the propriety

of the Stanwood plants as evidence. To the extent that Fairbanks provided a link between Stanwood and appellants, the district court suppressed any questionable communications.[10] Consequently, there appears to be no basis for suppression of the *Stanwood plants* at sentencing.

Finally, sentencing entrapment cases aside, neither the dissent nor Haynes and Denton cite any case in which a court has sanctioned the suppression of lawfully seized evidence at sentencing as a remedy for government misconduct. As noted above, both our cases and cases from other circuits traditionally hold that the remedy for outrageous government misconduct is dismissal of the indictment (a remedy that is disfavored and used only in the most egregious cases) or suppression at trial of evidence improperly obtained, precisely the remedy adopted here. See, e.g., *Rogers*, 751 F.2d at 1079 (reversing district court's dismissal of an indictment for alleged government misconduct and holding that any prejudice to the defendant from a former attorney's disclosures to an IRS agent could be neutralized by excluding improperly obtained evidence at trial); *Voigt*, 89 F.3d at 1068 (recognizing that suppression of evidence is a more appropriate remedy than dismissal of an indictment); *Fortna*, 796 F.2d at 732 (quoting *Morrison*, 449 U.S. at 365, 101 S.Ct. 665, for the proposition that "the remedy characteristically imposed [if the government obtained evidence in violation of the Fifth

---

Haynes and Denton cannot plausibly argue that sentencing entrapment or sentence factor manipulation occurred in this case. They were not predisposed to commit a lesser crime, with a lesser punishment. Rather, they were predisposed to commit precisely the crime for which they were convicted, and they had both the resources and the desire to grow 2,200 plants, all of which were discovered and lawfully seized before any government misconduct is alleged to have occurred.

**10.** At sentencing, the district court queried whether appellants would have been linked to Stanwood without Fairbanks. This supposition is nothing more than speculation unaccompanied by any concrete findings. We note that Haynes was first linked to Stanwood

in 1994 when his vehicle was found on the property after the fire, totally unrelated to Fairbanks. In addition, all communications concerning the civil forfeiture action relating to Stanwood were fair game once the district court found that Haynes and Denton conspired to obstruct justice with regard to this action. And, after 1995, Fairbanks was no longer within the attorney-client web but was participating with Haynes and Denton in their ongoing activities. Given the broad range of admissible evidence, and given the absence of findings with regard to the government's ability to link Haynes and Denton to the Stanwood grow, there is no basis in the record from which to conclude that the government likely would have been unsuccessful in establishing this link.

Amendment] is not to dismiss the indictment but to suppress the evidence or to order a new trial if the evidence has been wrongfully admitted"). *See also United States v. Lopez*, 4 F.3d 1455, 1464 (9th Cir.1993) (stating that, "when there is no showing of substantial prejudice to the defendant, lesser sanctions [than dismissal of the indictment], such as holding the prosecutor in contempt or referral to the state bar for disciplinary proceedings, can be adequate to discipline and punish government attorneys who attempt to circumvent the standards of their profession."). *None* of these cases contemplates suppression of lawfully seized evidence at sentencing as a remedy for government misconduct.

 It is no surprise that neither the dissent nor Haynes and Denton cite any authority for applying the exclusionary rule to sentencing proceedings, likely because the case law is to the contrary. *See, e.g., United States v. Vandemark*, 522 F.2d 1019, 1021 (9th Cir.1975) (declining to extend the exclusionary rule to sentencing after revocation of probation); *Tauil–Hernandez*, 88 F.3d at 581 & n. 3 (citing cases from seven circuits holding that the exclusionary rule does not apply at sentencing). *See also United States v. Kim*, 25 F.3d 1426, 1434–36 (9th Cir.1994) (declining to apply exclusionary rule at sentencing and limiting *Verdugo v. United States,* 402 F.2d 599 (9th Cir.1968), which sanctioned exclusion of illegally seized evidence at sentencing, "to circumstances where law enforcement officers commit a blatant illegality in pursuit of evidence compounding an already well-substantiated charge,"

*Kim,* 25 F.3d at 1435). Affirming the district court's sentencing decision would not only require us to ignore established precedent that the exclusionary rule generally does not apply to sentencing proceedings, but would make no sense in this case, where Haynes and Denton pled guilty to the amounts at issue.

Just as significant as the lack of authority for excluding the Stanwood plants is the lack of any logical nexus between seizure of the plants and the investigation and thus the lack of any deterrent effect. Any government misconduct in this case occurred long after the lawful seizure of these plants, so the conduct at issue is entirely unrelated to the evidence that the district court chose to exclude from the quantity calculus.[11]

 It is important to remember that Haynes and Denton were afforded an appropriate remedy for any government misconduct [12] in relying on Fairbanks as an informant: the district court agreed to suppress any tainted evidence stemming from Fairbanks, including evidence pertaining to communications about possible criminal investigation of the Stanwood property. Had Haynes and Denton gone to trial, the government would have been put to the test of linking them to the Stanwood grow. But, for whatever reason, Haynes and Denton chose not to take their chances at trial. Rather, they chose to plead guilty to a marijuana conspiracy charge encompassing both the Stanwood and Warden grows. Having made this decision, they were not entitled to a second bite at the apple, for they had already

11. Indeed, to the extent that an argument exists for the exclusion of *any* plants, such an argument would be persuasive only as to the Warden plants, not the Stanwood plants, for the Warden plants were the plants ostensibly discovered with Fairbanks's aid.

12. The dissent characterizes the government's conduct as cavalier and egregious misconduct, misbehavior, and misdeeds, conveniently ignoring the court's findings-at the close of a five-day hearing-that the government was vigilant about the attorney-client privilege.

The tenor of the findings is not that the government acted outrageously or otherwise committed misconduct but that the government may have inadvertently learned some information protected by the privilege. Receipt of such tainted information-which was properly suppressed-does not render the government's conduct misconduct, nor did the district court so find. Indeed, had the district court found the conduct outrageous and egregious-which it did not-then dismissal of the indictment may have been appropriate.

been granted their remedy: suppression at trial.[13] That they chose not to make use of this remedy did not give the court license to resurrect it at sentencing, especially in light of its earlier findings that the government had taken appropriate action with regard to Fairbanks and absent any new evidence or findings suggesting otherwise.[14]

 Reasoning that the Stanwood plants themselves should be suppressed-as opposed to communications or other evidence obtained in breach of the attorney-client privilege-due to government misconduct makes no sense. Deterrence could not be served in this case by excluding the Stanwood plants because they were lawfully seized. As the Supreme Court has made clear, "[t]he exclusionary rule enjoins the Government from benefiting from evidence it has unlawfully obtained; it does not reach backward to taint information that was in official hands prior to any illegality." *United States v. Crews*, 445 U.S. 463, 475, 100 S.Ct. 1244, 63 L.Ed.2d

537 (1980). *See also Arizona v. Evans*, 514 U.S. 1, 10–11, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (explaining that exclusionary rule is a judicially created remedy "designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect" and that use of the rule is unwarranted where no appreciable deterrence would result).

Although we have not previously addressed the precise issue here-whether a district court may use government misconduct to ignore a quantity of lawfully seized plants at sentencing for the purpose of determining the applicable mandatory minimum-our cases strongly suggest that it may not. As noted above, no recognized exception to the application of the statutory minimum applies in this case. We have repeatedly rejected departures from statutory minimums even for mitigating circumstances that might justify a departure from the relevant Sentencing Guidelines range. *See, e.g., United States v. Sharp*, 883 F.2d 829, 831 (9th Cir.1989); *United*

---

13. For this reason, the dissent's invocation of fairness and due process with regard to the district court's decision to exclude the Stanwood plants is misplaced. The court addressed these concerns when it ruled on the *motions to dismiss and suppress*. Fairness and due process were fully satisfied by the court's favorable suppression ruling. In addition, Haynes and Denton entered conditional guilty pleas allowing them the opportunity to appeal the denial of their motion to dismiss the indictment. We note that although they did appeal on this point, they did not challenge the scope of the district court's ruling on suppression with regard to Fairbanks and the attorney-client privilege. And, their decision to plead guilty effectively foreclosed them from arguing that, at trial, they would not have been linked to the Stanwood grow. In any event, it is sheer speculation as to what would have happened at trial.

14. We do not doubt the district court's authority to remedy instances of government misconduct; indeed, we note that the court crafted an appropriate remedy for tainted information stemming from Fairbanks: suppression at trial of evidence pertaining to improperly divulged communications. What the district court lacked authority to do was

to craft a second, duplicate "remedy" that had no nexus to any misconduct and that ignored the guilty pleas. Contrary to the dissent's assertion, the district court did not deny the motion to dismiss the indictment because the indictment encompassed more than just the Stanwood grow. The court never stated that dismissal was inappropriate because doing so would allow Haynes and Denton to escape liability for the Warden grow. Rather, the court, having found that "the government was vigilant about the attorney-client privilege and established safeguards so as not to learn facts that could be subject to the privilege" and that any intrusion on the privilege was "slight and unintentional," denied the motion to dismiss because it found that Haynes and Denton "failed to demonstrate any prejudice or substantial threat of prejudice." We would be remiss were we to ignore these specific findings.

The suggestion that dismissal would have unnecessarily allowed Haynes and Denton to escape liability for the Warden grow assumes that the district court lacked authority to remedy misconduct related to a particular grow. Stanwood and Warden were not inextricably bundled, and there is no indication that inclusion of both grows was necessary to successful prosecution on the conspiracy charge.

*States v. Harris*, 154 F.3d 1082, 1084–85 (9th Cir.1998). *Accord United States v. Verners*, 103 F.3d 108, 111 (10th Cir.1996).

 Finally, the *Koon* rationale [15] for departure from a Guideline range, *see Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), has no application in a statutory minimum case. *Koon* permits departures from the applicable Guideline range in cases that fall outside the "heartland" of cases based on circumstances that the Guidelines have neither prohibited nor taken into account. *Id.* at 92–96, 116 S.Ct. 2035. *Koon* did not, of course, address statutory minimums,[16] nor does it provide an analogous basis for departure, for the Guidelines themselves contemplate vesting discretion in the sentencing court where a factor has not been considered by the Sentencing Commission. Section 841 contains no language indicative of intent to vest discretion in the sentencing court based on factors not considered by Congress. Indeed, like it or not, statutory minimums are designed to achieve precisely the opposite result-to foreclose discretion absent a recognized exception.

The dissent, while arguing that courts have broad discretion to determine what evidence to consider at sentencing, offers no basis for disregarding the mandate of § 841(b)(1)(A). In effect, the dissent's approach permits the district court to wipe the slate clean with regard to the Stanwood grow in permitting Haynes and Denton to be sentenced as if they had never been convicted for this operation. The motion-to-dismiss battle, once fought and lost, could not be revisited with guilty pleas in hand and only a quantity to calculate. The problem for the dissent-as for the district court-is that the mechanism used to achieve their desired result did not square with the posture and facts of this case.

The district court's "solution," although attractive in some respects, is not one we are free to sanction. A statutory mandatory minimum cannot be converted into a discretionary exercise with the wave of an exclusionary wand. Although the sentence may be harsh and the government's conduct hardly beyond reproach, the district court addressed any taint in the government's evidence by ruling that it would suppress at trial any privileged communications obtained in violation of the attorney-client privilege. The court specified that it would suppress all such communications relating to the Stanwood grow, so Haynes and Denton actually got what they requested with regard to Stanwood. This remedy is consistent with our case law. *See, e.g., Rogers*, 751 F.2d at 1078–79 (holding that suppression at trial was proper remedy where confidential communications were improperly obtained). Exclusion of evidence at sentencing that was legally seized (and not even challenged) is not.

---

**15.** We discuss *Koon* not to address the district court's use of the case to depart from the Guideline range but to show that the *Koon* rationale for departing from an established Guideline range is not analogous to departing from a mandatory minimum. If the district court had the authority to exclude the Stanwood plants from the quantity calculus, in which case the Guideline range would have come into play, it might have been permissible to rely on related government misconduct to further reduce the sentence. This circumstance was not presented and thus there is no need to address it.

**16.** Other cases cited by Haynes and Denton, such as *United States v. Garza–Juarez*, 992 F.2d 896 (9th Cir.1993), and *United States v.*

*Lopez*, 106 F.3d 309 (9th Cir.1997), are Guidelines cases that likewise involve no mandatory minimum issues. In such cases, we have approved downward departures from the applicable Guideline range for government misconduct. *See, e.g., Garza–Juarez*, 992 F.2d at 911 (affirming departure based on coercive police and prosecutorial actions even though such misconduct was not sufficient to warrant dismissal of indictment or judgment notwithstanding the verdict); *Lopez*, 106 F.3d at 311 (affirming departure based on the prejudice that the defendant suffered as a result of the government's conduct in entering plea negotiations in the absence of the defendant's attorney).

In light of the plain text of the statute and the congressional purpose that it reflects, the district court's sentencing ruling cannot stand. Where the quantity of lawfully seized plants, properly attributed to the defendants, is not in dispute, the district court's concern over the government's conduct in other respects cannot justify ignoring the statutory mandate. Accordingly, we reverse the district court's sentencing determination and remand for sentencing in accordance with this decision.

AFFIRMED IN PART AND REVERSED IN PART.

REINHARDT, Circuit Judge, concurring in part and dissenting in part:

The district court summed this case up aptly when it concluded that "this is a highly unusual case, hopefully never to be seen again in this district or elsewhere." What made the case so unusual was the cavalier manner in which the government accepted the assistance of an informant who the government knew was handing over information protected by the attorney-client privilege. Judge Zilly dealt commendably with these "unusual" actions by law enforcement, and correctly resolved the issues stemming for the government's misconduct. The majority is wrong, therefore, to hold that his decision to exclude the evidence of the Stanwood grow at sentencing was misguided and in violation of our case law. I dissent from that part of the majority's decision.[1]

The majority believes that the district court's sentencing determination is "problematic" because its reason for excluding from the sentencing calculus the evidence seized at Stanwood—government misconduct—is "entirely unrelated" to that evidence. Wholly apart from the question of the district court's authority to exclude the

evidence, therefore, the majority sees no link between the government's allegedly wrongful conduct and the Stanwood evidence. The findings of the district court, however, make clear that it excluded the Stanwood grow from the sentencing calculation *precisely* because of the relationship between that evidence and the government's misdeeds. During sentencing, the district court concluded:

> This case in my opinion has presented some of the most difficult and unusual and frankly disturbing facts and circumstances of any criminal case that I have to date in 10 years been involved with.

> The government's chief informant was the private investigator of the defendant's lawyer, Mr. Mestel. The government paid and agreed to pay this informant a total of $150,000 to cooperate and provide testimony. Substantial questions were raised as to whether and to what extent the government exploited the information covered by the attorney-client privilege.

. . . . .

> The information provided to the government, in my opinion, relating to the Stanwood grow was severely tainted by the violation of the defendant's attorney-client privilege, which is a very important and sacred relationship in our legal system.

Absent this government misconduct,[2] the court concluded, it was unlikely that the government ever would have connected the Stanwood grow to the defendants:

> I am not convinced, as the prosecutor seems to be convinced, that Mr. Pryor's involvement and his limited knowledge would have been enough to result in the type of indictment that we have here. Although the Stanwood grow was first

---

**1.** I concur in Parts I and II of the majority opinion.

**2.** The majority disagrees with this characterization of the government's conduct. The characterization is the district court's, not the dissent's, however. I leave it to the reader to

determine the district court's view of the government's conduct by examining the statement of the district judge as set forth immediately above the text to which this note is appended.

brought to the prosecutor's attention in May of 1994, no ultimate arrest occurred in this case for more than three years until July of 1997.[3]

The district court could not on this basis dismiss the conspiracy indictment against the defendants with prejudice, because the indictment encompassed more than just the Stanwood grow. A dismissal with prejudice would have unnecessarily allowed the defendants to escape criminal liability for the Warden grow, even though, as to that grow, sufficient independent evidence existed to establish all elements of the offense. Nevertheless, the district court believed that, because of the government's misconduct, Haynes and Denton should not be held criminally responsible for the marijuana seized from Stanwood. Accordingly, the district court "rule[d] that the marijuana plants that were found at Stanwood should not be considered for purposes of determining either the guideline range or the statutory minimum." For some reason that escapes me, the majority stresses repeatedly that the Stanwood plants were legally seized. While this is true, it is entirely beside the point.

It is not the government's discovery and seizure of the marijuana plants that the district court concluded was the product of misconduct. Rather, it was the link between the marijuana and the defendants that the court concluded would likely never have been made without the governmental misconduct. Far from being unrelated to the government's misbehavior, therefore, the district court's decision was designed to and did remedy the very damage done by that misbehavior.[4]

In spite of the district court's compelling reason for excluding the Stanwood grow from the sentencing calculation, the majority concludes that, pursuant to our case law and the criminal statute under which the defendants were convicted, the district judge had no discretion to exclude the Stanwood plants. For this proposition, the majority relies principally on cases which hold that the exclusionary rule does not apply at sentencing. *See, e.g., United States v. Vandemark*, 522 F.2d 1019, 1021 (9th Cir.1975), *United States v. Tauil–Hernandez*, 88 F.3d 576, 581 (8th Cir.1996), and *United States v. Kim*, 25 F.3d 1426, 1432–33 (9th Cir.1994). The majority's

**3.** The majority suggests that it is pure speculation to conclude that the prosecution's case on the Stanwood grow stemmed from the conduct that underlay the district court's suppression order. The majority tends to dismiss the district judge's statements as speculation whenever those statements are not consistent with the majority's legal theories. In this instance, once again, it is best to let the district court's words—as set forth in the quote to which this note is appended—speak for themselves.

**4.** The majority contends that the remedy afforded the defendants at sentencing was somehow unnecessary and duplicative because the district court had earlier agreed to exclude the pertinent testimony relating to the Stanwood grow. Invoking an ancient legal principle, the majority says that prohibiting the government from using the evidence at sentencing would improperly afford the defendants "a second bite at the apple." However, the first "bite at the apple," the exclusion of the evidence from trial, would have afforded Haynes and Denton no remedy at all, from a practical standpoint. Regardless of

whether the testimony regarding Stanwood was suppressed, the defendants were clearly guilty of conspiracy to manufacture marijuana; the substantial independent evidence regarding the Warden grow made their conviction on the marijuana conspiracy count a certainty. Therefore, the district court's decision to suppress the evidence did nothing to change the fact that the defendants were well-advised to plead guilty to conspiracy to manufacture marijuana. Far from being duplicative or unnecessary, the exclusion of the Stanwood evidence at sentencing was the only meaningful remedy the district court could provide for the government's abuse of the attorney-client privilege (short of dismissing with prejudice). In any event, the majority fails to explain why a district court's decision to exclude evidence both at trial and at sentencing violates its two-bites rule; for, under the majority's decision, it is the district judge, not the defendants, who is prohibited from taking similar actions with respect to the same unlawful government conduct at two different stages of the proceedings. I am aware of no legal rule or maxim which so limits the discretion of the district courts.

conclusion that these cases support its holding, however, is based on an unwarranted and erroneous logical leap. The cases cited by the majority hold only that a court *may*, in certain circumstances, consider evidence during sentencing even when that evidence was seized in violation of the Fourth Amendment and would therefore be inadmissible at trial. The majority reads these cases to *require* sentencing courts to consider information seized in violation of Fourth Amendment rights. The cases, however, say no such thing. In fact, the principal reason underlying the holding in the cases cited by the majority is that courts have broad discretion to determine what evidence should be included for purposes of sentencing. Thus, contrary to the majority's claim that these cases deprive district courts of discretion to decide what evidence to include in sentencing calculations, they actually reinforce that discretion. Because the issue here is whether the district court had discretion to disregard the Stanwood evidence for sentencing purposes, the cases cited by the majority support affirmance, not reversal.[5]

In addition to the cases that the majority overreads, more general aspects of our sentencing case law strongly support the district court's exercise of discretion in excluding the Stanwood plants from the defendants' sentencing calculation. United States courts historically have permitted "a sentencing judge [to] exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed." *Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Although the introduction of the sentencing guidelines curtailed that discretion by eliminating district court discretion from some guidelines calculations, district judges still retain broad discretion where it has not been abrogated by the guidelines. *See United States v. Etherton*, 101 F.3d 80, 81 (9th Cir.1996) (noting that the Supreme Court has "recognized that even in this era of the sentencing guidelines, district courts retain broad sentencing discretion"); *United States v. Chischilly*, 30 F.3d 1144, 1161 (9th Cir.1994). Under the Guidelines regime, we have continued to hold that district courts have broad discretion to determine what evidence to consider at sentencing—even if that evidence is inadmissible at trial. *See, e.g., United States v. Hopper*, 27 F.3d 378, 382 (9th Cir.1994). Given that, as a general matter, "sentencing under the statutory mandatory minimums [does not] differ from the Guidelines," *United States v. Becerra*, 992 F.2d 960, 967 n. 2 (9th Cir.1993), this traditional discretion strongly supports the district court's decision to exclude the Stanwood grow.

Because our cases holding that the exclusionary rule does not apply at sentencing do not compel its holding, the majority retreats to the logic of statutory minimums.[6] The statutory minimum under § 841(b)(1)(A), the majority repeatedly stresses, is mandatory, not optional: the district court "shall" sentence a defendant

---

**5.** One case, *Kim*, contains dicta that supports the majority's view in part. However, as noted, the holding in *Kim* is only that the district judge did not err in considering the particular illegally seized evidence at sentencing. In fact, *Kim* expressly left open the question whether "suppression would be necessary and proper at the sentencing phase where it is shown that the police acted eggregiously." 25 F.3d at 1434 n. 8. Here, of course, the misconduct *is* egregious.

**6.** The majority also suggests that the defendants' plea agreement prohibited the district court from excluding the Stanwood grow.

The plea agreement specifically states, however, that with respect to the quantity of drugs included in the sentencing calculation, "the Court is not bound by [the plea] agreement and will make an independent determination." Notwithstanding the majority's efforts to downplay the significance of this statement, it fully supports the district court's action at sentencing. The defendants may be bound at sentencing by the statements in the plea agreement, but the court is not. It is free to do precisely what it did: make an independent determination with respect both to the facts and the applicable law.

to ten years if the quantity threshold is met. The majority is certainly correct; a defendant who qualifies for the mandatory minimum may not be sentenced to a shorter term of imprisonment. This conclusion, however, begs the question—what drug quantities must be included in determining whether the statutory minimum is met? Section 841(b)(1)(A) has absolutely nothing to say about that question. Accordingly, it too does not support the majority's holding.

In the end, my disagreement with the majority comes down to the following: The majority claims that, in the absence of any *specific* legislative rules or judicial holdings that district courts *have* discretion to exclude evidence at sentencing for legitimate reasons, it must conclude that they have no such discretion. In contrast, I believe that, in the absence of any *specific* legislative rules or judicial holdings that district courts *do not have* discretion to exclude evidence at sentencing for legitimate reasons, we should conclude that they do. Which presumption is correct must ultimately turn on which is better-supported by more general legislative rules and judicial holdings concerning sentencing determinations. To support its view, the majority relies on two sources of legal authority: (1) cases that affirm, rather than curb, the discretion of district courts to determine what evidence to include at sentencing; and (2) statutory language that makes certain minimum sentences mandatory, but that says nothing about the role of district courts in determining what evidence to include when arriving at those sentences. Obviously, neither of these sources of legal authority supports the majority's presumption against district court discretion. The presumption I apply, however, is supported by a long tradition of both judicial holdings and legislative rules affirming the broad discretion of district courts to determine what evidence to include for purposes of sentencing.

In short, the underlying legal principles regarding sentencing determinations support the district court's exercise of discretion in this case, and the majority has pointed to nothing that curtails that discretion. Moreover, the district court's decision to exclude the Stanwood grow from sentencing is supported by the dictates of fairness and due process. By excluding that evidence, the district court simply prevented the government from benefitting from its complicity in the violation of the defendants' constitutional rights. For these reasons, I would affirm the district court's decision. Accordingly, I dissent.